# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHEILA W. [1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 18 C 4855 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(i), 423, over four years ago. (Administrative Record (R.) 158-59). She claimed that she became disabled as of October 22, 2013. (R. 158), due to a host of impairments, including neurofibromatosis, congestive heart failure, degenerative bone disease, asthma, migraines, depression, and PTSD. (R. 176). Over the ensuing four years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on July 16, 2018, and the parties consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c) on September 14, 2018. [Dkt. #7]. The case was then reassigned to me four months later, on January 10, 2019. [Dkt. # 15]. Plaintiff asks the court to reverse and remand the Commissioner's decision,

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

while the Commissioner seeks an order affirming the decision.

**I.**

Plaintiff was 51 years old at the time of the ALJ's decision. (R. 27, 1587. She has an excellent work history, working steadily from 1987 through 2014. (R. 166). For at least the last 15 years, she has worked as a medical billing coordinator. (R. 188). This was skilled, sedentary work, and involved plaintiff supervising and training other employees. (R. 63-65, 243). Toward the end of her time there, she had a breakdown triggered by her autistic daughter's threats of suicide, and she went on mental health disability leave. The doctor okayed her to go back to work after about two months, but she was only able to make it through one day when she returned. (R. 49-50). She could no longer concentrate or remember things properly, and was plagued by chronic migraines along with light sensitivity. (R. 53-54). Owing to her neurofibromatosis and degenerative bone disease, she is unable to sit for more than two hours at a time or stand for more than 30 minutes. (R. 56-57). Since leaving work, she looks after her daughter and helps out her parents – they all live together. (R. 55).

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined plaintiff was not disabled. The ALJ found that plaintiff had a number of severe impairments: "depressive disorder, anxiety disorder, asthma, migraines, congestive heart failure, neurofibromatosis type 1, degenerative bone disease." (R. 16). She also had nonsevere impairments of vertigo and obesity. (R. 16-17). Plaintiff's psychological impairments caused mild limitations in the areas of understanding, remembering, and applying information and adapting or managing oneself; she had moderate limitations interacting with others and concentrating, persisting and maintaining pace. (R. 18). None of plaintiff's impairments, singly

or in combination, amounted to a condition that met or equaled an impairment assumed to be disabling in the Commissioner's listings. (R. 18).

The ALJ then determined that plaintiff could perform "light work . . . except involving: simple routine tasks; no interaction with the public and only occasional interaction with co-workers, but no tandem tasks or team tasks, or tasks where one production step depends upon another; overhead reaching bilaterally limited to frequent; occasional exposure to odors, dust, fumes gases, and other pulmonary irritants." (R. 18). The ALJ summarized the plaintiff's allegations and found that her: "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 20). The ALJ said plaintiff's allegations were not entirely consistent with the medical evidence or course of treatment, which the ALJ felt was routine. (R. 20). She also later said that plaintiff was involved in significant activities of daily living, indicating greater function than she alleged. (R. 24). The ALJ then went on to summarize the medical evidence. (R. 21-23).

The ALJ gave great weight to the opinions from the state agency psychologists who reviewed the medical record, finding they were consistent with the medical record as a whole. (R. 24). She accorded little weight to the reviewing doctors in regard to plaintiff's physical limitations because they felt plaintiff had no severe impairments, and the ALJ disagreed. (R. 24). The ALJ gave little weight to the assessments of plaintiff's treating psychologist that plaintiff was essentially unable to work, because it was based on plaintiff's subjective reports and contrary to the records of mental status exams and routine treatment. (R. 24). Finally, the ALJ gave partial weigh to the consulting

3

physician who examined plaintiff in connection with her application for benefits. (R. 25). She found the doctor's report not particularly useful as it failed to address plaintiff's limitations in terms of functional capacity. (R. 25).

Next, the ALJ, relying on the testimony of the vocational expert, found that plaintiff was unable to perform her past relevant light and sedentary work, although she did not explain why that was. (R. 25). The ALJ further relied on the testimony of the vocational expert who said that an individual with plaintiff's restrictions could perform work as "assembler production" (DOT #706.687-010; 180,000 jobs nationally); packing line worker (DOT #753.687-038; 400,000 jobs); and "folder garment" (DOT #789.687-066; 3000 jobs). (R. 26). As these jobs exist in significant numbers in the national economy, the ALJ found that plaintiff was not disabled and was not entitled to benefits under the Act. (R. 26-27).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997);

*Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.").

### III.

### A.

First and foremost, this is another in a long line of what can be called CPP cases – "concentration, persistence, and pace." As noted above, the ALJ determined that plaintiff suffered

5

a moderate limitation in concentrating, persisting, or maintaining pace. (R. 18). But the ALJ did not mention this in her residual functional capacity determination, or in her hypothetical to the vocational expert, opting instead to limit plaintiff to "simple, routine tasks." (R. 18, 65). The question is whether "simple, routine tasks" accounts for a moderate limitation in CPP. The answer from the Seventh Circuit, time and time again, has been no. *See Mischler v. Berryhill*, – Fed.App'x – , –, 2019 WL 1299948, at *5 (7th Cir. 2019)(". . . 'simple routine and repetitive tasks' in a low stress job . . . fails to account for the 'moderate' difficulties in concentration, persistence, and pace . . . ."); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019)(". . . we have "repeatedly rejected the notion that a hypothetical ... confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019)("Though particular words need not be incanted, we cannot look at the absence of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question.").

The Commissioner's attempts to respond to this issue, seemingly ignore the many CPP cases from the Seventh Circuit. The Commissioner submits that the ALJ is required only to incorporate into her hypothetical those limitations the ALJ accepts as credible. [Dkt. #19, at 14 (citing *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007))]. That's certainly true, but the ALJ, herself, found plaintiff was moderately limited in CPP. (R. 18). So, she had to include it in her RFC and hypothetical. But she never mentioned it in either.

But, says the Commissioner, what the ALJ did do was to accept the opinions of the state agency reviewers who both found that plaintiff was moderately limited in CPP, but could

nevertheless "perform simple routine tasks with adequate pace, persistence concentration." [Dkt. 19, at 14]; (R. 24). The Commissioner doesn't cite a case to support this theory that if a reviewing doctor does what the Seventh Circuit says an ALJ may not do, that's enough to account for a moderate impairment of CPP even if the ALJ doesn't alert the vocational expert to it. But, given the Seventh Circuit's holding in *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), reliance on the reviewing physician distilling a moderate limitation in CPP into simple work doesn't appear to be sufficient.

In *Moreno*, the district court addressed a CPP issue, and in one facet, did so along the lines the Commissioner is arguing here. *Moreno v. Berryhill*, 2017 WL 890102, at *9–10 (N.D. Ill. 2017). The reviewing doctor in *Moreno,* like the reviewing doctors here, found that the plaintiff had moderate limitations in the abilities to carry out detailed instructions and maintain attention and concentration for extended periods, but "was not significantly limited in his ability to perform . . . other . . . activities concerned with understanding and memory and sustained concentration and persistence." 2017 WL 890102, at *5; (R. 80-81, 99-100). Similar to the reviewing doctors here, the reviewing doctor in *Moreno* found that the claimant's "cognitive and attentional skills are intact and adequate for simple one-two step work tasks." *Id.*, (R. 81, 100). The ALJ's RFC then limited the claimant in *Moreno* to "routine, low stress work . . . ." and simple work instructions. 2017 WL 890102, at *6. The limitation here was a bit less descriptive: "simple routine tasks. (R. 18).

The plaintiff in *Moreno* appealed, and the Commissioner argued that the ALJ's reference to simple work instructions and to routine, low-stress work "reasonably accommodated Moreno's moderate difficulties in concentration, persistence or pace." Again, as here, these limitations were drawn from the opinion of a reviewing doctor. Still, the Seventh Circuit, reviewing the ALJ's

7

decision *de novo*, reversed:

> We cannot accept this argument. "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others *adequately captures* temperamental deficiencies and limitations in concentration, persistence, and pace." Yurt v. Colvin, 758 F.3d 850, 858–59 (7th Cir. 2014); *see also* Stewart v. Astrue, 561 F.3d 679, 684–85 (7th Cir. 2009).
>
> "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record." Stewart, 561 F.3d at 684. The question posed to the vocational expert did not address [plaintiff's] documented limitations in concentration, persistence, and pace. As a result, the vocational expert's assessment of the jobs available to [plaintiff] necessarily is called into doubt, as is the ALJ's conclusion that [plaintiff] is not disabled under the Social Security Act.

*Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)(emphasis supplied). Accordingly, we are bound to reject the Commissioner's argument here as well, and remand this case.

An ALJ's RFC or hypothetical must include all of a claimant's limitations, including deficiencies of concentration, persistence and pace. *DeCamp*, 916 F.3d at 675; *Moreno*, 882 F.3d at 730; *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The easiest way to do that, of course, would be to tell the vocational expert that the claimant has a moderate (or whatever degree) limitation in concentration, persistence and pace. *See O'Connor-Spinner*, 627 F.3d at 619. But it seems that it is a rare case indeed where an ALJ does this. All this is not some idle technicality. Accounting for deficiencies in concentration beyond a limitation to simple or routine work is important. It's easy to imagine a job involving simple, routine, repetitive tasks, such as a job that involves a conveyor delivering a product to a worker, who must then place it in a receptacle—product after product, receptacle after receptacle, over and over, at a certain pace. Many unskilled, simple, routine jobs are made up of precisely this type of tedium. Those of a certain age

might recall the classic Lucille Ball–Vivian Vance sketch where the two were tasked with wrapping candies coming down a conveyor at a candy factory. See http://www.youtube.com/watch?v=8NPzLBSBzPI.2 The job is exceedingly simple; it is unskilled. But for one whose concentration waxes and wanes, or cannot persist or maintain a pace throughout the day, it is a daunting if not impossible occupation. This is why a limitation to unskilled, simple, routine work does not necessarily account for a limitation in concentration. And it is a second reason why this matter must be remanded to the Commissioner. *See Joanne F. v. Berryhill*, 2019 WL 1388962, at *4 (N.D. Ill. 2019); *Peterson v. Berryhill*, 2017 WL 2274338, at *3 (N.D. Ill. 2017).

Indeed, the jobs the vocational expert cited as example in this case appear to fall right into this category or work. *Cf. Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014)("It is apparent from the description that many of the jobs are beyond the plaintiff's capacity to do."). Assembler, production, is described as an assembly line job where, obviously, a worker's attention could not wax and wane. https://occupationalinfo.org/70/706687010.html. Similarly, a packing line worker is beholden to the speed and pace of a conveyor line. https://occupationalinfo.org/75/753687038.html. Perhaps a garment folder requires a similar degree of focus. We don't know and, indeed, we don't know about any of these jobs in terms of maintaining concentration because the vocational expert wasn't asked.

**B.**

So, that is enough to require a remand in this case. But it is worthwhile to point out a couple of other issues. The ALJ decided to give limited weight to GAF scores, reasoning that they were just snapshots of a claimant's functioning rather than a longitudinal assessment. (R. 20-21). The ALJ cited just one GAF score from the record – a 55 in July 2017 – and noted that it indicated moderately

9

severe symptoms. (R. 20). The ALJ then reported, "most GAF scores recorded in the claimant's medical record are in the range consistent with moderate severity of symptoms." (R. 21). Not exactly. The ALJ didn't provide any citation to the record for these GAF scores, but plaintiff's GAF score was 35 on February 12, 2014 (R. 364), 39 on February 21, 2014 (R. 369), and 45 on February 26, 2014 (R. 372). Scores in the 40s can indicate serious symptoms; scores in the 30s can indicate a *major* impairment in several areas. https://www.webmd.com/mental-health/gaf-scale-facts.

At another point, the ALJ rejected the assessment of the plaintiff's treating psychologist, in part, because it was "based mainly on the claimant's subjective reports . . . ." (R. 24). As the plaintiff points out, all a psychologist or psychiatrist ever has to go on, aside from brief observations during a session, are the subjective reports of the claimant. That's how mental healthcare works. *Knapp v. Berryhill*, 741 F. App'x 324, 328 (7th Cir. 2018); *Aurand v. Colvin*, 654 F. App'x 831, 837 (7th Cir. 2016); *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). *But see Winsted v. Berryhill*, 915 F.3d 466, 472 (7th Cir. 2019)(ALJ properly rejecting therapist's opinion as it was "'based solely on [claimant's] subjective complaints' – an appropriate reason for an ALJ to discount an opinion.").. There's no MRI for depression or anxiety.

Circling back around to the vocational evidence, we note that the DOT listings for the three jobs the vocational expert cited have not been updated in about forty years, production assembler and garment folder in 1977, packing line worker in 1980. The Seventh Circuit has frequently complained that such listings are obsolete. *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018); *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014); *Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014). "Since it was last updated . . . it is certain that many of the jobs have changed and some have disappeared." *Browning*, 766 F.3d at 709. Moreover, as is often the case, the source for

the numbers of these jobs is suspect. The only source the vocational expert cited was the DOT (R. 61, 66-68), but the DOT does not provide job numbers. *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018); *Hill v. Colvin*, 807 F.3d 862, 871 (7th Cir. 2015); *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014). But whatever the vocational expert's source for the numbers of jobs may have been, confidence in the testimony is not bolstered by the fact that vocational experts' testimony as to numbers for these positions varies widely from case to case. For example, the vocational expert here estimated there were 400,000 packing line worker jobs nationally in 2017. But in the couple of years leading up to the hearing in this case, that number has been given as anywhere from 57,000 to 600,000. *See, e.g., Brown v. Berryhill*, 2018 WL 3245010, at *3 (W.D.N.C. 2018)(140,000 packing line workers jobs nationally in 2015); *Macumba v. Berryhill*, 2019 WL 95462, at *5 (E.D. Cal. 2019)(600,000 packing-line worker jobs nationally in 2016); *Mouthaan v. Comm'r of Soc. §.*, 2018 WL 1531546, at *2 (W.D. Mich. 2018)(57,000 packing line worker jobs in 2015); *Jones v. Colvin*, 2016 WL 6124156, at *4 (N.D. Ala. 2016)(100,000 packing line worker jobs nationally in 2014).

Even allowing for waxing and waning due to shifts in the economy, those numbers differ drastically from vocational expert to vocational expert. Numbers also vary significantly for production assembler, which the vocational expert put at 180,000 nationwide, *see, e.g., Britton v. Berryhill*, 2018 WL 4332062, at *6 (E.D. Mo. 2018)(17,000); *Blais v. Comm'r of Soc. §.*, 2017 WL 489739, at *2 (S.D. Ohio 2017)(500,000 nationally); *Jones v. Colvin*, 2016 WL 6124156, at *4 (N.D. Ala. 2016)(200,000), and garment folder, which she put at 3000. *See, e.g., Miller v. Comm'r of Soc. §.*, 2018 WL 6841359, at *3 n.2 (S.D. Ohio 2018)(18,000); *Mitchell v. Comm'r of Soc. §. Admin.*, 2018 WL 704367, at *6 (D.S.C.2018)(112,000); *Stevens v. Comm'r of Soc. §.*, 2017 WL 6000611,

at *2 (S.D. Ohio 2017)(1,525,000). This is why courts may wonder if the vocational expert's numbers are "conjured out of whole cloth." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment is granted [Dkt. #11], the defendant's motion for summary judgment [Dkt. #18] is denied, and the case is remanded to the Commissioner for further proceedings.[2]

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

**DATE:** 9/26/19

---

[2] Plaintiff asks that the ALJ's decision be reversed and an award of benefits ordered. "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011). As that is not the case here, an award of benefits is not appropriate without further administrative proceedings.